# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CAPITAL GENERATIONS LLC,** | Case No.: **1:25-cv-7321** |
| Plaintiff, | |
| ~ against ~ | District Judge: *to be assigned* |
| **NEXTWAVESTEM, LLC,** | |
| Defendant, | Magistrate Judge: *to be assigned* |

**COMES NOW** the Plaintiff **CAPITAL GENERATIONS LLC**, with their Original Complaint against the Defendant **NEXTWAVESTEM, LLC** and does respectfully allege as follows:

### A. NATURE OF THE CASE

1. Plaintiff agreed to provide staffing services to the Chicago-based Defendant subject to a fair, negotiated-for, and binding non-raiding clause. That clause barred the Defendant from exploiting the introductions made by the Plaintiff to employ the Plaintiff's staff directly.

2. In a shocking breach of trust, the Defendant has solicited the Plaintiff's employees in violation of the Parties' agreement and otherwise attempted to and did poach the Plaintiff's staff, and otherwise misused Plaintiff's trade secrets and breached their contract with Plaintiff in violation of Federal, Wyoming, Illinois and other applicable law.

3. Defendant's breaches were willful as shown, among other things, by the Defendant's receipt of a Cease and Desist Demand from the Plaintiff, which was ignored.

4. After the Plaintiff has made every effort to amicably resolve this matter with the Defendant directly without success, and despite being on actual and constructive notice of their violations of their Agreement with Plaintiff and their obligations under Wyoming, Illinois, Federal and other relevant law, the Defendants have persisted in their tortious damage to Plaintiff.

5. Left with no other option, the Plaintiff now respectfully seeks judicial intervention in the nature of a preliminary and permanent injunction against Defendant to stop their continued raiding of the Plaintiff's employees, and misuse of Plaintiff's trade secrets and other violations of 18 U.S.C. § 1836 (the Defend Trade Secrets Act) as well as damages for Conversion; Breach of Contract; Breach of Implied Contract; and other statutory and common law claims as described fully in this Original Complaint.

6. In support of their claim, the Plaintiff respectfully submits the following:

### B. PARTIES

*i. Plaintiff*

7. At all times relevant to this Original Complaint, the Plaintiff, **CAPITAL GENERATIONS LLC** was a limited liability company organized and existing under Wyoming business whose principal place of business was at the City and County of Sheridan in the State of Wyoming.

8. For diversity purposes, Capital Generations LLC is a citizen of the state of its owners, namely New York and is not a citizen of any other State.

9. Where appropriate in this Original Complaint, **CAPITAL GENERATIONS LLC** is referred to as "**CG**" or "**Plaintiff**".

10. Capital Generations LLC is a leading provider of outsourced business development services, specializing in high-performance Sales Development Representatives (SDRs) and Account Executives (AEs) for fast-growing organizations across the United States. Founded on a mission to help companies scale outbound operations efficiently, Capital Generations delivers proven talent, structured playbooks, and pipeline accountability—without the overhead of in-house sales teams.

11. Since its inception, Capital Generations LLC has earned a reputation for excellence and reliability among early-stage ventures, SaaS providers, and educational technology firms. The company has successfully partnered with clients to generate millions in qualified pipeline, and has a track record of cultivating top-performing sales professionals who are rigorously trained and closely managed.

12. Clients of Capital Generations benefit from a data-driven, outcomes-based approach, with transparent reporting, ongoing optimization, and clearly defined success metrics. The company's team has consistently exceeded performance targets and helped drive revenue growth for its clients while maintaining a culture of ethical business practices and professional integrity.

13. As a result, Capital Generations is regarded in the industry as a premium provider of outsourced sales services—one that invests heavily in its people and protects the integrity of its client and employee relationships.

ii. **_Defendant_**

14. At all times relevant to this Original Complaint, Defendant **NEXTWAVESTEM, LLC** was a Limited Liability Company organized and existing under

Illinois law whose principal place of business is at Carol Stream in the County of DuPage in the State of Illinois.

15. For diversity purposes, NextWaveSTEM LLC is a citizen of the state of its owner, namely the State of Illinois, and not any other State.

16. Where appropriate in this Original Complaint, NextWaveSTEM LLC is sometimes referred to as "**NWS**" or "**Defendant**".

17. At all times relevant to this Original Complaint, Defendant NextWaveSTEM was subject to a Service Agreement between itself and the Plaintiff.

18. A complete, true and accurate copy of the Service Agreement between the Parties is annexed to and incorporated by reference here as Exhibit A, signed by both Parties through Docusign on January 3, 2024.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over the dispute pursuant to 28 U.S.C. § 1332, because the amount in dispute exceeds the sum of seventy-five thousand United States dollars ($75,000.00), exclusive of interest and costs; and because this action seeks injunctive relief where the benefit to the Plaintiff from the injunction is reasonably determinable at a value of more than seventy-five thousand United States dollars ($75,000.00), *See Golin v. Neptune Mgmt. Corp.*, 704 F. App'x 591, 595 (7th Cir. 2017) *quoting Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

20. In furtherance of the claim that this Court has diversity jurisdiction over the dispute, the Plaintiff further submits that the Defendant is a citizen of Illinois and not any other State, and the Plaintiff is a citizen of the State of New York and not of Illinois.

21. Additionally and in the alternative, this Honorable Court has jurisdiction under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 *et seq.*, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for the Federal claim and supplemental jurisdiction over the State Law claims pursuant to 28 U.S.C. § 1367(a).

22. Defendant is subject to personal jurisdiction in the Northern District of Illinois because they are resident here, because they have actively directed their business activities to this District and have breached the contract in this District.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendant is resident at and is engaging in their breach of contract in this District. Further, the Defendant has engaged in business activities in District including but not limited to the breach of contract at issue in this Complaint.

24. While the Parties agreed that their agreement would be governed by the law of the State of Wyoming, as stated in the Agreement at ¶ 17, the Parties did not agree to a forum selection clause outside of Illinois.

25. At no time have the Parties entered into any Settlement Agreement addressing or compromising on the claims described in this Original Complaint.

26. The liability described in this lawsuit accrued before the expiration of any relevant Statute of Limitations.

27. Any and all conditions precedent to the filing of this suit have been satisfied.

## FACTUAL BACKGROUNDS

i. *The January 2024 Agreement*

28. After detailed negotiations, an opportunity for each party to review with their Counsel, and careful consideration by both parties, in January 2024 the Parties entered into a written Service Agreement, a complete, true, and accurate copy of which is annexed as Exhibit A.

29. The Agreement provided that it served as the Entire Agreement between the Parties, *See* ¶ 12, and at no time have the Parties amended the Agreement in any relevant manner.

30. Under the terms of the Agreement, the Plaintiff was to supply the Defendant:

> "Sales services of Two Account Executives for the purpose of reaching out to prospects and selling NextWaveSTEM, LLC services. Outreach and selling will be done via telephone, email, and LinkedIn for the purpose of finalizing contracts on behalf of NextWaveSTEM, LLC. Each Account Executive will have a sales target of $400,000 in a 12-month period.

> "Services will be provided on a continuous basis and in the event of attrition of NextWaveSTEM, LLC.'s exclusive Account Executive, there will be no more than 3 business days before an Account Executive is appointed."

> Agreement at ¶ 1.

31. Given how difficult it is to identify employees and capable account executives and to protect both sides the Parties further agreed:

> "For the term of this Agreement and for the period of twenty four (24) months thereafter, without the prior written consent of the other party, neither party shall either employ, or directly or indirectly solicit or entice away (or seek or attempt to entice away) from the employment of the other party any person employed (or any person who has been so employed in the preceding twenty four (24) months by such other party in the provision or receipt of the Services."

> Agreement at ¶ 10.

32. The non-raiding clause was a limited and reasonable provision that was carefully negotiated between the Parties and which was entered into between two sophisticated businesses who understood its terms and had agreed that the scope of the non-raiding provision was necessary to accomplish the purposes of the agreement and reasonable in scope.

33. The Plaintiff complied fully with its obligations under the Agreement, including by the provision of account executives to the Defendant for the purposes described in their Agreement.

34. On or about April 20, 2025, the Defendant purported to terminate their services with the Plaintiff, at which time they claimed that the investment in staffing was not worth it for the company. The Plaintiff later learned this was not true, as the Defendants directly poached the Plaintiff's employees at that time.

ii. *The Defendant Raids Plaintiff's Staff*

35. In approximately May 2025, the Plaintiff learned that the Defendant made direct offers to the Plaintiff's employees.

36. Defendant offered employment to two of Plaintiff's employees – employees who had been supplied by the Plaintiff to the Defendant pursuant to the Agreement.

37. The Defendant poached Mr. Marcos Amaral, who resigned from the Plaintiff on or about April 15, 2025, and began his employment with the Defendant at around that same time.

38. The Defendant also poached Ms. Tareeta Arora who gave her "two weeks notice" on or about April 1, 2025, and began her employment with the Defendant around May 1, 2025.

39. Both Mr. Amaral and Ms. Arora had been employed by the Plaintiff and they were introduced to the Defendant pursuant to the Agreement as account executives.

40. On May 5, 2025, immediately upon learning that the two employees had been poached, the Plaintiff sent a Demand to the Defendant that the Defendant Cease and Desist from employing, soliciting or enticing away (or seeking or attempting to entice away) the Plaintiff's employees.

41. Notwithstanding the Defendant's commitment to the Service Agreement, and their actual knowledge that doing so was in breach of contract, at some time in late May 2025, the Defendant hired Marcos Amaral, and, upon information and belief, is in the process of, has attempted to and/or has already hired other employees of the Plaintiff.

42. As of the filing of this Complaint, the Defendant employs Mr. Amaral and Ms. Arora in breach of the Parties' agreement. Mr. Amaral and Ms. Arora are engaged in the same account executive services provided for in the Parties' Agreement – all in breach of the non-raiding clause against hiring Plaintiff's employees.

43. As a direct and proximate consequence of the Defendant's breach of the contract, the Plaintiff suffered damages in the amount of not less than seventy-five thousand United States dollars ($75,000.00).

44. The damage to the Plaintiff by Defendant's actions is irreparable, and the relevant law provides for a right to injunctive relief because the raiding of employees irreparably destroys any value to the Plaintiff's business. The Plaintiff reasonably values the injunction as being worth more than two hundred and fifty thousand United States dollars ($250,000.00) in damages to the Plaintiff.

## AS AND FOR THE FIRST CAUSE OF ACTION
Breach of Contract
(Plaintiff against Defendant)

45. Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

46. Plaintiff and Defendant were subject to the Contract, including the non-raiding clause.

47. Plaintiff complied fully with their obligations under the contract.

48. Defendants breached their contract with the Plaintiff by soliciting and hiring the Plaintiff's employees.

49. As a direct and proximate consequence of the Defendant's breach of the contract, the Plaintiff suffered damages in the amount of not less than seventy-five thousand United States dollars ($75,000.00).

50. The damage to the Plaintiff by Defendant's actions is irreparable, and the relevant law provides for a right to injunctive relief because the raiding of employees irreparably destroys any value to the Plaintiff's business. The Plaintiff reasonably values the injunction as being worth more than two hundred and fifty thousand United States dollars ($250,000.00) in damages to the Plaintiff.

51. In addition, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent the Defendants from engaging in further breach of the contract in a manner that would be irreparable.

**AND FOR THE SECOND CAUSE OF ACTION**
(Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*)
(Plaintiff against Defendants

52. Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

53. Through the Defendant's acts and omissions described in this Original Complaint, the Defendants have misappropriated and continue to misappropriate Plaintiff's highly sensitive trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, including but not limited to the information about the account executive, their compensation package, and other information.

54. Plaintiff owned and possessed confidential, proprietary, and trade secret information relating to its business practices and employment of Mr. Amaral and Ms. Arora, including but not limited to the identity of Plaintiff's staff and the terms of their employment, including the financial terms of their compensation that would enable a competitor to negotiate with them more effectively.

55. These trade secrets also include the procedures and processes for soliciting customers by Mr. Amaral and Ms. Arora as trained by the Plaintiff.

56. Where appropriate in this Original Verified Complaint, the material referred to in the above paragraphs, as well as all of Plaintiff's proprietary intellectual property related to its business and operations, is referred to collectively as the "Trade Secrets".

57. The Trade Secrets were obtained through the Plaintiff's investment of substantial effort and capital into developing, maintaining and possessing its Trade Secrets.

58. Plaintiff's Trade Secrets related to products and services (namely, sales industry recruitment) used in and intended to be used in interstate commerce.

59. Plaintiff took reasonable measures to maintain the secrecy of its trade secrets, including through the non-raiding clause included in the Agreement.

60. Plaintiff's Trade Secrets cannot be properly acquired or duplicated because they have been uniquely developed by the Plaintiff, because of the limited number of individuals who can access them, and because they are maintained entirely by Plaintiff and its customers, who are contractually obliged not to engage in raiding.

61. The Plaintiff's Trade Secrets have independent economic value from not being generally known, and not being readily ascertainable through proper means by others because such information is extremely valuable to Plaintiff, critical to the operation of Plaintiff's business, and, if available to others, would enable them to compete with Plaintiff to Plaintiff's economic detriment.

62. Defendant acquired and exploited Plaintiff's Trade Secrets during their contract term because the Plaintiff disclosed to the Defendant the identity of their employees, which the Defendant used in hiring the Plaintiff's employees.

63. Defendant's misuse of the Trade Secrets described above was done without the Plaintiff's express or implied consent.

64. Defendant's conduct constitutes knowing, willful, and malicious misappropriation of Plaintiff's Trade Secrets.

65. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been substantially and irreparably harmed in an amount not readily capable of determination and for which there is no adequate remedy at law.

66. Unless restrained by this Honorable Court, Defendant will cause further irreparable injury to Plaintiff.

67. Plaintiff respectfully submits that pursuant to the Defend Trade Secrets Act, this Court is authorized, directed to and should grant Plaintiff injunctive relief in the nature of an Interim and Permanent injunction that enjoins Defendant, their agents and employees, and all persons acting in concert or participation with Defendants, from continuing to employee the Plaintiff's employees and otherwise violating the non-raiding clause.

68. Plaintiff respectfully submits that Defendant's actions caused the Plaintiff to suffer direct and consequential damages and is entitled to recover compensatory damages, including opportunity costs and exemplary damages in an amount to be proven at trial.

69. Defendant has been unjustly enriched as a result of their misappropriation of Plaintiff's Trade Secrets. Therefore the Plaintiff also respectfully seeks recovery for this unjust enrichment, including the disgorgement of Defendant's ill-gotten profits earned through the use of the Plaintiff's employees.

70. Additionally and in the alternative, to the extent that Plaintiff's actual damages and Plaintiff's unjust enrichment are not reasonably ascertainable or subject to proof, Plaintiff respectfully submits that they are entitled to a reasonable royalty for the use of such Trade Secrets at a rate that reflects their actual market value.

### AS AND FOR THE THIRD CAUSE OF ACTION
Tortious Interference with Contractual Relations
(Plaintiff against Defendant

71. Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

72. Plaintiff had a business relationship with Mr. Amaral, Ms. Arora and each of the Plaintiff's other Employees.

73. Defendant knew of the Plaintiff's relationship with Mr. Amaral, Ms. Arora and the Plaintiff's other Employees.

74. Defendant intentionally interfered with the Plaintiff's business relationship with Mr. Amaral, Ms. Arora, and Plaintiff's other Employees through improper means that amounted to an independent tort of breach of contract, violations of the Defend Trade Secrets Act, and other torts.

75. As a direct and proximate consequence of the Defendant's interference with the contract, the Plaintiff suffered damages in the amount of not less than seventy-five thousand United States dollars ($75,000.00).

76. The damage to the Plaintiff by the Defendant's actions is irreparable, and the relevant law provides for a right to injunctive relief because the raiding of employees irreparably destroys any value to the Plaintiff's business. The Plaintiff reasonably values the injunction as being worth more than two hundred and fifty thousand United States dollars ($250,000.00) in damages to the Plaintiff.

77. In addition, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent the Defendants from engaging in further breach of the contract in a manner that would be irreparable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for Judgment as follows:

A. An Interim and Permanent injunction that enjoins Defendants, their agents and employees, and all persons acting in concert or participation with Defendants, from raiding the Plaintiff of employees and from continuing to employ any employee that was retained by Defendant through unlawful raiding of the Plaintiff;

B. Compensatory damages, including opportunity costs and exemplary damages in an amount to be proven at trial but in no event less than $250,000.00;

C. Disgorgement of Defendants' ill-gotten profits arising from their use and disclosure of the Trade Secrets;

D. Additionally and in the alternative, reasonable royalty for the Defendants' use of the Trade Secrets at a rate that reflects their actual market value;

E. Other compensatory, exemplary and other damages as provided under Federal, Wyoming and Illinois law;

F. Awarding Plaintiff's legal fees as provided under the Defend Trade Secrets Act, Wyoming and Illinois law;

G. Providing Legal and Equitable Relief to which the Plaintiff is entitled; *and*

H. Awarding Plaintiff such other relief as this Court may deem just and proper under the circumstances.

**PLAINTIFF RESPECTFULLY
DEMANDS TRIAL BY JURY FOR THOSE ISSUES THAT ARE TRIABLE**

Dated: **June 30, 2025**

Respectfully Submitted,

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
bg@gottesmanlegal.com
*Counsel for the Plaintiff*